IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES N. FAZIO,<br><br>    Plaintiff,<br><br>   v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., ET AL.,<br><br>    Defendant. / | No. C 12-00497 CRB<br><br>**ORDER GRANTING MOTION TO DISMISS** |

As part of a larger case stemming from his allegedly inaccurate credit reports, Plaintiff James Fazio accuses Defendant Bank of America, N.A. (the "Bank") of violating the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601, *et seq.*, and the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, *et seq*. The Bank moves to dismiss under Federal Rule of Civil Procedure 12(b)(6). As discussed below, the Court GRANTS the Motion, with leave to amend.

**I.   BACKGROUND**

Fazio borrowed money from the Bank in March 2007 to buy a home in Cayucos, California. Compl. ¶ 15. About four years later, the Bank foreclosed, approved a short sale of the residence, and reported the developments to three credit-reporting agencies. See id. ¶¶ 19-20.

Disputing the accuracy of the updated reports, Fazio asked the agencies in July 2011

to investigate the matter. Id. ¶ 22. When they failed to do so to his satisfaction, Fazio asked the Bank – by letter sent September 18, 2011 – to provide certain information so that he could investigate on his own.[1] See id. ¶¶ 23-29.

Fazio's claims against the Bank are about what happened next. The Bank told Fazio on October 3, 2011, that it had received his inquiry and that it "would respond further after [the Bank] completed [its] investigation." Id. ¶ 30. As of the filing of the Complaint on January 31, 2012, however, the Bank never followed up. Id. ¶ 31.

Accordingly, Fazio sued, bringing a single "claim for relief" against the Bank on four separate bases. See id. ¶¶ 42-45. First, he says that the Bank failed to acknowledge receipt of his "qualified written request" ("QWR") within the deadline imposed by RESPA Section 2605(e)(1)(A). Id. ¶ 43. Next, he accuses the Bank of failing to substantively respond to the QWR within the deadline set by Section 2605(e)(2). Id. ¶ 44. Third, Fazio asserts that the Bank violated RESPA Section 2605(k) by failing to identify "the owner of the First Mortgage Note" within 10 days. Id. ¶ 45. Finally, he contends that this last failure also violates TILA Section 1641(f). Id.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While it need not contain detailed allegations to withstand attack, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. When making this determination, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).

---

[1] The Bank received this letter on September 21, 2011. See Request for Judicial Notice (dkt. 31) Ex. A ("RJN") at 6-8.

2

## III. DISCUSSION

The Bank argues that RESPA did not apply to Fazio's letter and that, in any event, Fazio failed to allege that the violations resulted in actual damages.[2] See Mot. at 4-6. As discussed more fully below, the Court agrees with the Bank that Fazio has not alleged damages, and it will therefore dismiss the case against the Bank with leave to amend. This Order will also address the Bank's other challenges to Fazio's Complaint, beginning with the Complaint's reliance on some of the amendments to RESPA that Congress enacted in Title XIV of the Dodd-Frank Wall Street Reform & Consumer Protection Act ("Dodd-Frank Act") of 2010. See Compl. ¶¶ 43-44 (noting amendments).

### A. RESPA & the Dodd-Frank Act

Three amendments apply to Fazio's Complaint. First, the Dodd-Frank Act shortened the time that RESPA allows for loan servicers to acknowledge receipt of a qualified written request, from 20 days to five days. See Pub. L. No. 111-203, § 1463(c)(1), 124 Stat. 1376, 2184 (2010). This reduction is relevant because the Bank responded to Fazio's letter within eight business days. See RJN at 6 (noting Bank's receipt of letter on September 21, 2011); Compl. ¶ 30 (asserting that Fazio received notice from the Bank on October 3, 2011). Second, the Dodd-Frank Act shortened the time for servicers to substantively respond to a QWR, from 60 days to 30 days. See § 1463(c)(2), 124 Stat. at 2184. Because the Complaint alleges that the Bank has never responded to Fazio's letter in substance, see ¶¶ 30-31, this reduced timeframe is irrelevant. Finally, the Dodd-Frank Act created RESPA Section 2605(k), which requires the servicer to identify the owner or assignee of a borrower's loan within 10 days of his request for such information.[3] See § 1463(a), 124 Stat. at 2182. This new requirement is relevant here because Fazio alleges that the Bank has never provided this

---

[2] The Bank never acknowledges the TILA claim in its papers. Its challenge related to a lack of alleged damages, however, implicates both the RESPA and TILA claims.

[3] This requirement is similar to that imposed by TILA Section 1641(f), with the exception that Section 1641(f) does not set any particular deadline. The Bank never addresses its failure to provide the information as required by either of these statutes. Instead, the Bank argues that Fazio's letter did not trigger RESPA, and repeats that it "remains willing" to provide this information now. See, e.g., Reply at 2.

3

information, despite his request that it "provide proof of all interested parties to this debt instrument . . . ." See RJN at 7.

As several courts have held, however, the Dodd-Frank Act's revisions to RESPA have not yet taken effect. See, e.g., Patton v. Ocwen Loan Servicing, LLC, No. 11-0445, 2011 WL 3236026, at *4 (M.D. Fla. July 28, 2011) (construing Section 1400(c) of the Dodd-Frank Act as delaying its RESPA amendments because no regulations implementing them have taken effect); Fenske-Buchanan v. Bank of America, N.A., No. 11-1656, 2012 WL 1204930, at *3 (W.D. Wash. April 11, 2012) (same). Thus, the Bank's deadline to acknowledge receipt of the letter was 20 days, which it met. See 12 U.S.C. § 2605(e)(1)(A); Compl. ¶ 30. Likewise, RESPA did not require the Bank to identify the loan holders within 10 days, as Fazio alleges. See generally, 12 U.S.C. § 2605. To the extent that the cause of action against the Bank rests on these claims, therefore, it is dismissed with prejudice.

Accordingly, just two purported violations form a viable basis for Fazio's cause of action against the Bank. First is the allegation that the Bank has not substantively responded to his qualified written request, thereby violating RESPA Section 2605(e)(2). Next is the claim that the Bank failed to identify the owner of the mortgage note as required by TILA 1641(f).

### B. RESPA Claim

Section 2605(e)(2) of RESPA provides that loan servicers must take any of several actions within 60 days of receiving a "qualified written request." It requires that the servicer (1) make any applicable changes to the borrower's account as he requested, (2) explain in writing why such changes cannot be made, (3) provide the borrower the information he requested, or (4) explain why that information is unavailable. See 12 U.S.C. 2605(e)(2)(A)-(c). The Bank had not done any of these things as of the filing of the Complaint on January 31, 2012. Compl. ¶ 31.

The Bank defends on three grounds. It first argues that Fazio's letter did not constitute a "qualified written request" that triggers Section 2605. Id. Next, it asserts a

4

related argument that Fazio requested information beyond RESPA's scope. Id. at 4-5. Finally, the Bank attacks Fazio's failure to allege actual damages. Id. at 5-6.

### 1. The Letter Was a QWR

Section 2605(e)(2) requires a loan servicer to respond substantively to a "qualified written request" within 60 days of receipt. To constitute a "qualified written request," the letter must meet certain requirements. First, it has to request "information relating to the servicing" of his loan. 12 U.S.C. § 2605(e)(1)(A). RESPA defines "servicing" as the "receiving [of] any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest . . . with respect to the amounts received from the borrower . . . ." See 12 U.S.C. 2605(i)(3). In other words, "servicing" here refers to the Banks' receipt and application of Fazio's payments.

Second, and not in dispute here, the letter must include sufficient information to allow the lender to identify the writer's name and account. Id. at § 2605(e)(1)(B)(ii). Third, the letter must "include[] a statement of the reasons for the belief of the borrower . . . that the account is in error or provide[] sufficient detail to the servicer regarding other information sought by the borrower." Id. at § 2605(e)(1)(B)(ii) (emphasis added).

Fazio's letter requested the following:

> (1) Proof of "all interested parties to this debt instrument" for certain dates, "<u>to ensure that I [have] paid the proper company</u> and to ensure that there was no error in either the amounts due during the monthly payments."
>
> (2) Any "pool servicing agreements along with contact information" for any parties to such agreements. "My fear is that <u>a payment could have been lost in the shuffle</u> between investors and <u>a payment could have been misapplied</u> or sent to the wrong servicer or the wrong investment pool."
>
> (3) "<u>[A] complete accounting history of this loan to show that all charges and credits have been properly applied[.]</u>"
>
> (4) Any "necessary glossary or summary of account codes" so Fazio could interpret the accounting history.
>
> (5) A copy of the Bank's "internal procedures for dealing with misapplied, and or lost payments."
>
> (6) A detailed listing of "any unfavorable credit reporting" to third-party agencies, along with the date of such reporting and

5

<div style="margin-left:2em">

"the method to which the data was transmitted" to the agencies.

(7) A copy of "<u>internal procedures for payment processing,</u> including lost payment, lost check, invalidated balance procedures."

(8) Information as to "the appropriate sections of the employee training manuals that outline the procedures AND the remedies for all situations with payment processing and investigation requests."

</div>

RJN at 7 (emphasis added). Fazio said that he wanted the information so that he could "correct any inaccurate reporting . . . to third party credit reporting agencies[.]" Id.

The Bank argues that the letter was not a QWR because it "fails to identify any alleged account errors" other than mentioning that the credit-reporting agencies provided "conflicting account information." See Mot. at 4 (citing RJN at 7). This argument fails.

Fazio's letter revealed his fear that his account was in error. See RJN at 7 ("[T]here is multitudes of conflicting account information, including balance, late fees, origination issues, etc."). Moreover, Fazio provided the basis for this belief: "a payment could have been lost in the shuffle between investors and a payment could have been misapplied or sent to the wrong servicer or the wrong investment pool." RJN at 7. While much of his concern involved his credit reports, Fazio clearly believed that something could be wrong with his account. The Bank does not cite any authority as to why this is not sufficient.

Additionally, even if his statements were not enough to sufficiently raise a claim that his account was in error, Fazio provided details about "other information sought by the borrower." See 12 U.S.C. § 2605(e)(1)(B)(ii). At a minimum, the letter did this by requesting for a complete account history "to show that all charges and credits have been properly applied." RJN at 7. Moreover, the Bank never attacks the status of Fazio's letter for failure to satisfy this second prong, which alone is enough to transform the letter into a QWR. See <u>Luciw v. Bank of America, N.A.</u>,

No. 10-2779, 2010 WL 3958715, at *3 (N.D. Cal. Oct. 7, 2010) (finding the statutory requirements for a letter to constitute a QWR are written "in the disjunctive").

Accordingly, Fazio's letter constituted a qualified written request to which the Bank was required to respond within 60 days. The next question, then, is whether the Bank violated this requirement.

### 2. Some Requests Were Within the Scope of RESPA

As discussed above, Section 2605(e)(2) requires a loan servicer either (1) to fix the account error or provide account information or (2) to explain that there is no error or that the information is unavailable. See 12 U.S.C. 2605(e)(2)(A)-(c). It also must share contact information for someone "who can provide assistance to the borrower." Id.

The Bank argues that it did not violate RESPA because the Act does not require it to provide <u>some</u> of the information Fazio sought. Mot. at 5. It says five particular requests were out of bounds:

- Proof of all interested parties to this debt instrument from the origination date to current date;

- Any pool servicing agreements along with contact information for all parties mentioned in said agreement;

- Any negative credit reporting to third party credit reporting agencies;

- A copy of Bank of America's third party procedures for payment processing, including lost payment, lost check, invalidated balance procedures;[4]

- The appropriate sections of the employee training manuals that outline the procedures AND the remedies for all situations with payment proceeding and investigation requests.

Mot. at 5.

This argument is essentially another way of disputing the letter's status as a QWR – this time on the grounds that Fazio did not seek "information relating to the

---

[4] Purporting to quote Fazio's letter, the Bank has inserted the phrase "third party" into this request. What Fazio actually requested was "a copy of <u>your internal</u> procedures." RJN at 7.

servicing" of his loan. See Mot. at 5. The Bank thus asserts that "a majority of Plaintiff's demands" were outside of RESPA's scope. Even assuming that the Bank is correct, the resulting implication is that at least some of Fazio's requests were within the Act's coverage.

To that end, the Bank says that it "remains willing to provide information concerning the servicing of [Fazio's] loan, including a complete payment history, and is also willing to provide contact information for the current holder of [Fazio's] Promissory Note." Mot. at 5. But Fazio specifically asked for this information in his qualified written request. See e.g., RJN at 7 ("Please provide a complete accounting history of this loan to show that all charges and credits have been properly applied."). Accordingly, the Bank should have provided this information within 60 days of Fazio's request.[5]

Additionally, if the Bank does not believe that the account is in error or if it believes that the information Fazio sought "is unavailable," RESPA requires that it explain so, to Fazio, in writing, within 60 days of receipt of the QWR. See 12 U.S.C. 2605(e)(2)(A)-(C). The Bank never responded to tell Fazio that his account was not in error. And it never explained why any of the information that the Bank believed fell outside the scope of RESPA would not be forthcoming. Fazio has therefore adequately alleged a violation of Section 2605(e)(2).

### 3. Damage Claim

Fazio's RESPA claim nonetheless cannot stand. When a party such as the Bank fails to follow RESPA's requirements, it "shall be liable to the borrower for each such failure in . . . an amount equal to the sum of any actual damages to the

---

[5] The Bank asserts that it "attempted to respond that it was willing to provide a payment history and contact information" for the holder of Fazio's note. Mot. at 1. But the Complaint says nothing of such an attempt, and the Bank has not attached any such correspondence to its Motion. Further, the Bank does not say when it sent this "attempted" response. On a motion to dismiss, the Court must honor the allegations of the Complaint.

8

borrower as a result of the failure[.]" [6] 12 U.S.C. 2605(f)(1)(A). Fazio has not alleged any such "actual damages."

"Although [RESPA] does not explicitly set this out as a pleading standard, a number of courts have read [it] as requiring a showing of pecuniary damages in order to state a claim." Allen v. United Fin. Mortgage Corp., 660 F. Supp. 2d 1086, 1097 (N.D. Cal. 2009) (citing Hutchinson v. Del. Sav. Bank FSB, 410 F. Supp. 2d 374, 383 (D. N.J. 2006) ("Plaintiff must, at a minimum, also allege that the breach resulted in actual damages."); Singh v. Wash. Mut. Bank, No. 09-2771, 2009 WL 2588885, at 5 (N.D. Cal. Aug. 19, 2009) (similar); see also Luciw, 2010 WL 3958715, at *4 ("Plaintiff must plead either that she has suffered actual damages or that [Defendant] has engaged in a pattern or practice of violating RESPA[.]").

Courts have "liberally" interpreted this requirement. See Yulaeva v. Greenpoint Mortgage Funding, Inc., No. 09-1504, 2009 WL 2880393, at *15 (E.D. Cal. Sept. 3, 2009). Still Fazio has not met it: he has not asserted in any way how the Bank's RESPA violation has harmed him.[7] Because Fazio has not alleged any harm as a result of the Bank's RESPA violation, his RESPA claim is dismissed, with leave to amend.

//

---

[6] RESPA also provides for additional damages up to $1,000, in cases where the violator has engaged in a "pattern or practice of noncompliance" with Section 2605. 12 U.S.C. 2605(f)(1)(B). Fazio has not alleged any such pattern.

[7] Fazio argues that it is enough that he has requested "judgment for statutory, compensatory and punitive damages against Defendants." See Opp'n at 4. To the extent that it would help, the word "statutory" does not appear in Fazio's demands for relief. See Compl. at 8. Moreover, none of these requests allege any harm caused by the violation. Fazio also contends that the Bank's conduct has led to reputational damage and to increased borrowing costs. Opp'n at 4. He did not, however, allege this in the Complaint. His Complaint similarly does not allege, as in Johnson v. HSBC USA, Nat'l Ass'n, No. 11-2091, 2012 WL 928433, at *2 and *6 (S.D. Cal. March 19, 2012), either that his "credit has been damaged and his home . . . been made unmarketable because 'the title to Plaintiff's home has been slandered [and clouded,'" or that "the failure to receive that information caused him to pay more than was necessary on his loan and to incur costs in repairing his credit."

### C. TILA Claim

When so requested, a loan servicer must identify the "owner of the obligation or the master servicer of the obligation." See 15 U.S.C. § 1641(f); Ording v. BAC Home Loans Servicing, LP, No. 10-10670, 2011 WL 99016, at *3 (citation omitted) (D. Mass. Jan. 10, 2011) (imposing "reasonable" timeframe in absence of specific statutory deadline). To withstand a motion to dismiss, however, a plaintiff must allege damages resulting from any failure to provide such information. See Che v. Aurora Loan Services, LLC, No. 11-1458, 2012 WL 899629, at *3 (C.D. Cal. March 15, 2012) (citations omitted). The Bank has yet to respond to Fazio's September 2011 letter, which requested "proof of all interested parties to this debt instrument . . . ." See RJN at 7. But because Fazio has not alleged actual damages, the Court directs Fazio to amend this claim.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion to Dismiss. The claims under RESPA Section 2605(e)(1)(A) and Section 2605(k) are dismissed with prejudice. The Court allows Fazio 30 days from the date of this Order to amend his claims under RESPA Section 2605(e)(2) and TILA Section 1641(f).

**IT IS SO ORDERED.**

Dated: June 11, 2012

CHARLES R. BREYER
UNITED STATES
DISTRICT JUDGE